Our last case is Baker-Hughes The District Court's order granting a preliminary injunction was legally erroneous on multiple fronts. First, the Court never construed the claims at issue. The most egregious example of that error relates to the consisting of claim. Consisting of is a legal term of art which means I claim what follows and nothing else. The District Court, however, found infringement even though it was admitted that the Nalco process contains three steps that are not found in the Assembly Claims. The court applied a definition in finding that Nalco was copying. Why isn't that sufficient evidence of what the court considered to be in the meaning of the claim? Well, Your Honor, I would submit that the court did not apply a definition, number one. Number two, the court disregarded the file history and, in particular, the clear disclaimer in the file history. So as the claim was originally submitted, it was a broad, open-ended claim comprising. In light of the rejections from the examiner, the claim was then amended by the examiner to have the narrow term consisting of I claim what follows and nothing else. The examiner, in making its amendment, specifically noted that the claim as amended excludes any other steps. So I would submit, Your Honor, the District Court committed error on two fronts with respect to consisting of. Number one, it did not construe the claim and it certainly did not apply the precise legal meaning of that claim. Number two, the District Court disregarded the disclaimer in the file history and, in doing so, the court found a likelihood of infringement when, in fact, the accused process has three steps that are not included in that claim. Do those additional steps serve any measurable or scientific purpose in the chemistry of the claim? From a hydrocarbon phase into a water phase? I would submit, Your Honor, that they are related to the metals removal process. So the answer is yes. Now, the District Court found that... Related to is a pretty broad term. My question was a little more specific. The claim seems to enhance prior art, add to prior art in a specific way. Sure. Do these additional steps affect that at all? It affects the metal removal process because, for instance, a demulsifier would make the emulsion easier to separate. So I would submit, Your Honor, it does affect the process and it does improve upon the process. The District Court, however, seemed to apply a standard that is not found in the case law, namely, do the additional steps have points of novelty that are not found in the prior art? There's no case that would suggest that is an appropriate approach. So, Your Honor, the other flaws that we see in this opinion are that... Well, he specifically found that it didn't affect the chemistry, right? It really didn't affect the way this method worked. Well, Your Honor, I think what the District Court was pointing to was not so much the fact that that process was novel. I would submit, Your Honor, that it affects the chemistry in the sense of making the emulsion easier to resolve. And whether or not it affects the chemistry, I would submit, Your Honor, is not a germane determination for determining what is the meaning of a consisting of claim. So Your Honor, the District Court failed to construe the claim and it failed to properly apply the consisting of limitation, particularly in light of the disclaimer. And we review that for an abuse of discretion in this context. Well, Your Honor, the Chamberlain case says that you would review that for abuse of discretion. But a flaw in a court's claim construction, a District Court's claim construction, can constitute a substantial question that would warrant not granting an injunction. And I would submit, Your Honor, that there is a substantial question on this record based on the way the District Court applied consisting of that would certainly say the injunction and the analysis of infringement is questionable and hence should never have issued. Go ahead. I'm sorry. But we also submit, Your Honor, that based on this record, the clear meaning of consisting of and the fact that there really is no factual dispute as to what's in the accused process in light of the file history, this is a case where this court can hold as a matter of law that NALCO is not infringing. What's the status of the merits case? Is it proceeding or is it on hold because of this PI? The status of the merits case, Your Honor, is that there was a claim construction in the District Court about three weeks ago. Interestingly, the parties spent considerable time arguing over the meaning of the term emulsion. So the District Court now has the parties' arguments on consisting of and emulsion. And also, interestingly, Your Honor- Is there a trial schedule? I don't think there's a precise trial date, discovery is proceeding. I don't know if there's a precise trial date or not, Your Honor. I don't think so. Your Honor, beyond the infringement issue and beyond the failure to construe the claims, there also is a substantial question going to the patent and the validity of the patent on the 943. We raised a reference to the District Court called the Reynolds reference. The Reynolds reference, on its face, has no emulsion. I disagree, Your Honor. If you look at Column 2 of Reynolds, Reynolds describes a thoroughly and intimately mixture of this solution. Column 2 of Reynolds also teaches a mixture. And finally, Your Honor, Claim 1 of Reynolds, I think the first word in the body of the claim refers to a mix. I would submit, Your Honor, that Reynolds, on its face, teaches- Do emulsions mix? Yes, Your Honor. Well, an emulsion is a mixture, at least as taught by Column 2 of the 943 patent. Column 2 of the 943 patent refers to a dispersion. I thought the Reynolds patent was instructing the user to avoid emulsions. I would disagree, Your Honor. Because they interfere with effective separation. I would disagree. So, if you look at what Reynolds teaches in that regard, in Column 3, Reynolds teaches a particular embodiment of an emulsion with a high pH can become very thick and difficult to resolve. And then Reynolds goes on to teach that the way to resolve that thick emulsion is to lower the pH precisely the way the 943 patent teaches it. So, Your Honor- But it also doesn't teach the acids that are used in the 943 patent, right? For creating the emulsion? Yes, Your Honor. It teaches the specific acids. Lactic acid and malic acid. Again, it does so in Column 3. But it doesn't teach those for the mixture. It doesn't teach those in connection with their use for the mixture. Oh, I would disagree, Your Honor. Again, I think if you look at Claim 1 of Reynolds, I think it specifically does teach that. And I also would submit, Your Honor, if you look at, on the record, Appendix A63, if you look at Claim 1, also if you look at Claim 5 of Reynolds, those elements are specifically taught. But I'm going to come back for a moment and say this is a preliminary injunction here. You're asking questions to me, what does an emulsion mean? There is no claim construction by the District Court to answer that question. We asked the Court to construe emulsion. The District Court said Reynolds teaches away from an emulsion. But based on what construction? The fact that the District Court is now conserving emulsion, Your Honor, shows that it is and it was a disputed term. I would also, though, submit that certainly Reynolds on its face suggests the existence of emulsion and raises a substantial question going to the validity of the patent. I would also point out, Your Honor, that in the re-examination of the 943, the Patent Office found that Reynolds does, in fact, teach an emulsion. So we have a situation here where, in the re-examination, the Patent Office has found that Reynolds raises a 103 question going to the patentability of the 943 patent. What are you going to combine it with? Your Honor, Reynolds on its face is a 103 reference. What would I combine it with? The reference petroleum refinery. I also would point, Your Honor, to the reference It has a different pH. Petroleum refinery? Yeah, that has a pH between 6 and 8. The patent is below 6. Your Honor, I would disagree. The appendix A718 refers to a pH of 7 or less in the water. So I would submit, Your Honor, that petroleum refinery does, in fact, teach a pH within the range. I also would submit, Your Honor, that you don't even need to combine it with anything else. Because if you look at Reynolds, and particularly claims 7 and 8 of Reynolds, the pH range is certainly below 6. And, again, I come back to the point that Reynolds alone is a 103 reference. And certainly Reynolds alone raises a substantial question going to the validity of the patent. So, Your Honor, I would submit that on this record, where there is a substantial question of non-infringement, based on the consisting of language. Based on the disclaimer of the file history. And based on the fact that it's conceded that the accused process has additional steps beyond those enumerated in the claim. Based on the fact that Reynolds alone raises a substantial question of validity. The conclusion that the patent office has affirmed by finding that reference alone raises a question of patentability. I would submit, Your Honor, that... Is the re-exam finished? No, Your Honor. Where the re-exam is right now is Baker Hughes has responded to the rejection. It's just started, right? It's just started, yes, Your Honor. It's just started. It's just started. So, with all that, Your Honor, we would submit that a substantial question on infringement and invalidity exists. And certainly, Your Honor, we also would submit that there are legal errors as to irreparable harm. On that front, the bottom line is the district court found that the harm, irreparable harm, possibly might exist. Under crane code, that's insufficient. And the district court never answered the question that we posed multiple times. Why wouldn't money damages suffice here? All the harms that have been articulated are ones that could be compensable by money damages. We would submit, Your Honor, that under crane code, Baker Hughes did not meet its burden of proof. Well, but you've already offered a 35% discount to one of its customers. Its market's going to be blasted. Why isn't that sufficient? Your Honor, for one simple reason. Baker Hughes has already quantified the discount. If it's quantified the discount, damages could be calculated. And that's assuming, Your Honor, that there's any nexus between the price reduction and the claim dimension. And that's not a statutory scrutiny. You're saying there's no inherent value in having an exclusive market right? Your Honor, I think there is an inherent value. But at a preliminary injunction stage, the question is, would money damages be compensable? But there's always a damage figure that would potentially compensate. What? They're saying the harm goes beyond just that money. They want to have the market exclusivity. Sure, Your Honor, that's the case in every patent case where someone moves for a preliminary injunction. Well, so you're saying if they have licenses, they don't? I'm sorry, Your Honor. It's not true of every case, right? I mean, plenty of cases. Well, I think it's virtually. I'm sorry, Your Honor. They have licenses. Yes, I agree with that, Your Honor. But I think it's true in the type of patent case here where one is seeking an injunction and where one is simply saying, I will be harmed because my exclusivity will be lost even though money damages could be calculated at the end of the day. Your Honor, my time is almost up. Thank you. Thank you, Mr. Abernathy. Mr. Barr. I plead the court. John Barr for the Appellees, Baker Hughes and Baker Petrolite. Before Baker, no one was able to develop a method for removing metals and amines from crude oil in a refinery desalting process. Nowco tried it with their own method and they shut down the refinery twice. Mr. Barr, why isn't Mr. Abernathy correct in the analysis of the claim where the consisting of language is pretty well understood in patent law that you have those four steps, five steps and it's completed with those five steps? Well, in this case, Your Honor, the consisting of language appears in the preamble of the claim. And what Nowco is really wanting to do here is read out the term method in a refinery desalting process. It is clear under this court's precedent that if this language appears in the preamble, if it gives structure to the claim and if it's been relied upon, as it was here, to distinguish the prior art in prosecution, then it's a valid limitation for the claim. And specifically here, the district court judge recognized that point. Judge Hoyt rejected the argument by Nowco and he stated that the 943 patent does not claim to invent the refinery desalting process. Instead, it claims to utilize it or to present a method that can be included in a refinery desalting process. If they add three steps beyond the consisting of steps of the claim, you're saying that that consisting of language can be interpreted, I mean comprising of, instead of consisting of? No, Judge Yoharza, we're not saying that the language should be reinterpreted as comprising. However, as the district court recognized in this case, the three additional, so-called additional steps that Nowco contends that it practices do not enable the chemistry. And further to Judge Rader's question a moment ago, these steps, adding the demulsifier, adding corrosion inhibitor, and heating the crude oil do not have any effect on the chemistry. So this is a fact question. And here, of course, the standard is abusive discretion. And Judge Hoyt clearly understood from the testimony of the hearing and from the evidence that was presented at the preliminary injunction hearing that these steps did not enable the chemistry. So while the court did not engage in a formal claim construction at the preliminary injunction stage, Nowco admit that at some point? Excuse me? Did Nowco admit that at some point? That the court did not engage in a formal claim construction? No, that there was no chemical difference. Yes, yes, Judge Rader. In fact, Mr. Lordo, who testified for Nowco, I believe he testified specifically to the corrosion inhibitor, that the corrosion inhibitor did not affect the chemistry of the removals of metals and amines from the process in the refinery and desalter. It's clear from the opinion that the district court understood what the disputed terms meant. He stated that. He talked about what I just read you about consisting of. He also talked about emulsion. Likewise, the examiner allowed the claims in this case because he determined that Baker's method in a refinery desalting process consisting of the claimed steps excluding other steps is not taught in the prior art. So to go with Nowco's theory here, we need to read out both the examiner's reason for allowance of claim one and the actual claim language itself in the preamble method in a refinery desalting process. And that would be wrong. The district court didn't do that and neither should this court. The refinery desalting process limitation is in the preamble, it's in the specification, it's in the prosecution history, it's even in the title of the 943 patent. And I would like to direct the court to a couple of references in the joint appendix which were not mentioned in that section of our brief and specifically that's A1953, A1960, A136 and A129. And those are places where Baker repeatedly distinguished the prior art as not being related to refinery desalting processes. The second issue, Your Honor, that was raised is the validity issue. And the validity issue and the anticipation emulsion issue go hand in hand. In this case, NALCO contends that they're practicing the Reynolds 463 patent which they claim is anticipatory prior art. It's important to note though that the Reynolds 463 patent was one of the references that was actually pointed out to the PTO by Baker  Baker patent. And here the district court correctly applied the presumption of validity that arises from the PTO's consideration of the Reynolds 463 patent. And in fact, there was really no dispute between NALCO's expert and Baker's expert at the preliminary injunction hearing regarding what the term emulsion means in a refinery desalting process. As Judge Rader noted a moment ago, the big issue here was whether or not Reynolds disclosed emulsions as being beneficial or not. And the court, I believe, was referring a moment ago to the one difficulty with the addition of base, however, is the formation of emulsions which can interfere with effective separation. And I think this quote also points out another important distinction between the Reynolds patent and the Baker patent. And that is the Baker patent is at an acidic range. Judge Rader, you asked a moment ago about the pH. And the Baker patent reduces the pH to 6 and below. The 463 Reynolds patent has a different chemistry. It operates in the alkaline range. And that's why it talks about raising the pH. In fact, it can raise it as high as 9. So it's a different chemistry. And I think that's clear from that quote. What about the irreparable harm issue? I mean, there's no contract with Sunoco yet at all, right? Actually, what happened was, and this is important, the NALCO came in and was testing to NALCO refinery. And so NALCO came in to replace Baker. And the indication from the customer was that if NALCO's process worked, that they would replace Baker. So the irreparable harm issue, which was testified to by Baker's president, Mr. Marfone. Well, if Baker gets replaced, then it gets compensated for what it's lost with respect to that particular transaction. Why is that different than any other? Well, it's very difficult, as Mr. Marfone testified, it's very difficult to put a dollar value on the losses. There's erosion of price, as Judge Rader mentioned a moment ago, that NALCO's already come in and offered a 35% discount to Sunoco. What you're really talking about is potential customers you haven't even seen yet, right? You want the exclusive market, which means there will be you don't even know how many customers. That's exactly right. That is certainly one of the important factors here. You can't even quantify how much the damages are, because you don't know everybody you'll be selling this to. That's exactly right. That is certainly one of the factors. Now, having led you into that trap, aren't there really a limited number of refineries here? Couldn't we really calculate how many potential users there are and really get to some reliable damage figure? It would be very difficult to do that, because there are a limited number of refineries where we're currently selling the process, but I believe the testimony from Mr. Marfone was that there were over 40 refineries where we were trying to sell this process. So if they get those next 40 clients, then you can be compensated for your loss by damages. I mean, isn't that how is that different than most other cases where there's a potential that you're going to lose business because of the infringer, and then you're going to be compensated monetarily for that loss? Well, as Judge Rutter just pointed out, we don't know how much money we would make from all these other refineries if we were in there. There's refineries all over the country that could buy this process. Additionally, the price would be eroded. We would lose our No, no, no, but you're saying you're going to lose the business to NALCO. It's not hypothetically. I mean, it's either you or him if he's the infringer. So you can look at what ultimately what kind of contracts he gets and the profits that he makes and adjust that accordingly. Respectfully, Judge Prost, I would disagree, because NALCO is able to defeat Baker's patent. We don't know what other companies. We have lots of other competitors, and they can all come out there and practice a method as well in competition. Likewise, there was testimony about, and there was obviously some dispute about this, but there was testimony about other services that were sold, and we recognize there's going to be an issue under the Ride Height case, whether or not they're part of the same process or not, and whether or not we're going to get pulled through damages. But that was another issue that was discussed about how these are often single-source contracts. And so if you get into a chemical plant as the single source, then you get all the business. And so there's an issue there that makes it very difficult, if not impossible, to determine what other damages would be suffered and what other losses that you would have. And frankly, the evidence of irreparable harm here was unrebutted. There was no evidence that Mr. Marfone was testifying to was not, in fact, correct. Any contest on the balancing of hardships? No, there wasn't. In fact, NALCO didn't even raise that in the appeal here. They didn't even raise that as an error. So clearly, of course, with a balance of hardship except for we as the patentee has a patent, the balance of the hardships is going to be in our favor where you have an unpatented competitor. Dealing with the obviousness point, the Reynolds 463 patent was owned by Chevron. Chevron employed Mr. Reynolds. And so the patent that NALCO now claims anticipates the Baker process and is the one that they're doing to do exactly the patented process. It wasn't obvious to Chevron. Chevron owned that patent and employed the inventor. Yet they came to Baker Hughes and said, can you come in and help us with this process? It wasn't obvious to NALCO because when they came into Chevron they had an equal opportunity to try their process. They shut down the refinery twice. So Baker's patent was issued directly in response to this market demand. Crude oils are getting worse and worse around the world. This Dover crude out of Africa has high levels of calcium and that's one of the things that this patent removes is the calcium from the crude oil. In regard to the obviousness issue also, NALCO... Will it help with Gulf Stream oil? You know, I don't think it would remove crude oil from the Gulf of Mexico. Well, I was just looking for some help there. It would certainly be great if it would. One of the other problems that NALCO has here on the obviousness front is they have cherry picked from different prior art references while disregarding other stats, and I think you pointed this out in your questioning, Judge Rader, in the same references without explaining how or why someone with skill and ordinary skill in the art would do that. So under KSR, NALCO is required to demonstrate an apparent reason to combine the known elements in the fashion claimed by the patented issue, and they've been unable to do that without using Baker's patent as a road map. In regard to the re-examination question that was raised, that evidence was never presented to the district court, and it shouldn't be considered here. That evidence meaning the fact of the re-examination? Yes, Judge Probst, the fact that the re-exam happened after the injunction here, and that evidence was not after the first injunction, so that evidence was never presented to the district court, and it actually was after the second injunction as well, and we've asked if this court is inclined to consider that evidence, we would like to present our own supplementation to the record with our points there. Of course, granting the re-exam does not establish any likelihood of patent invalidity. Has that been submitted to the district court? There was a request by NALCO, this is interesting, the timing of this, NALCO requested to submit the actually in regard to the re-exam, I don't believe that was a request from the district court. Let me just think. Okay, you're telling me. That's correct. I believe they did submit it to the district court, but the district court did not rule on that. Of course, the standard approved for a re-exam is substantially lower than the standard to invalidate a patent by the court. So the fact that there's been a re-exam granted certainly doesn't affect what's before the district court here. Because there's of course no presumption of validity in front of the patent examiners like there is before the district court. So to rather to sum up here, in closing, this court should affirm the preliminary injunction. NALCO has not shown their burden that the district court abused his discretion in granting the injunction. It's undisputed that NALCO is practicing Baker's patent. The district court understood the claim terms and there was no need for a formal construction by the district court at the preliminary injunction stage. Secondly, the patent is not obvious. There was no reason to combine the known elements of what's in the prior art with out Baker's patent as a road map. And third, Baker will suffer irreparable harm as was testified by Mr. Marfone. Loss of goodwill, loss of price, loss of market, loss of reputation. Does the court have any further questions? Thank you, Mr. Barn. Mr. Abernathy, you have just a few seconds. You have a thought or two for us? Your Honor, the primary assaulting process in the prior art process enabled the claim. There had been no need for the examiner to change the claim from comprising to consisting of. Where else would you put consisting of except in the preamble? Well, to answer your question, Your Honor, the claim was amended to overcome the prior art. Baker is essentially arguing that the refinery assaulting process distinguishes its process from the prior art and hence the preamble language has meaning. If that, in fact, were the case, the examiner would not have needed to amend the claim. The comprising of language would have been sufficient. That's my point, Your Honor. Thank you. Thank you, Mr. Abernathy.